UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

IN RE:                                                                    Chapter 13
                                                                Case No. 24-60206-MER

Joshua LaRue Anderson
                    Debtor.


**NOTICE OF HEARING AND MOTION**
**FOR RELIEF FROM AUTOMATIC STAY (REAL PROPERTY)**

TO:     The Debtor and the other entities specified in the applicable Federal Rules of Bankruptcy
Procedure and Local Rule 9013-2:

        1)      U.S. Bank National Association ("Movant") hereby moves this Court for the relief
requested below and gives notice of hearing.

        2)      The Court will hold a hearing on this motion on Tuesday, April 29, 2025 at 1:00
o'clock p. m., or as soon thereafter as counsel can be heard, before the Honorable Michael E.
Ridgway, in Courtroom 2, U.S. Courthouse, 2nd Floor, 118 Mill Street, Fergus Falls, Minnesota.

        3)      Any response to this motion must be filed and delivered no later than Tuesday,
April 22, 2025, which is seven (7) days before the time set for the hearing (including Saturdays,
Sundays, and holidays).   UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY
FILED, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION
WITHOUT A HEARING.

        4)       This court has jurisdiction over this motion pursuant to 28 U.S.C. §§157 and 1334,
Fed. R. Bankr. P. 5005 and Local Rule 1070-1.  This proceeding is a core proceeding.  The petition
commencing this Chapter 13 case was filed on May 3, 2024.  The case is now pending in this court.

        5)      This motion arises under 11 U.S.C. § 362 and Fed. R. Bankr. P. 4001. This motion
is filed under Fed. R. Bankr. P. 9014 and Local Rules 9013-1 - 9019-1. Movant requests relief
from the automatic stay with respect to property having an address of 1514 16th Street S, Saint
Cloud, MN 56301 (the "Property") subject to a lien. Movant requests said relief be effective
immediately notwithstanding Fed. R. Bankr. P. 4001(a)(3). The facts and circumstances
supporting this Motion are set forth in the Affidavit in Support of Motion for Relief from
Automatic Stay filed contemporaneously herewith (the "Affidavit").

        6)      A Chapter 13 Plan was confirmed on August 27, 2024.

        7)      The Debtor, Joshua L Anderson and Co-Debtor, Stephanie-Ann N Caldwell have
executed and delivered or are otherwise obligated with respect to that certain promissory note in
the original principal amount of $114,701.00 (the "Note").  A copy of the Note is attached to the
Affidavit as Exhibit A.  Movant is an entity entitled to enforce the Note.

8)      Pursuant to that certain Mortgage dated January 12, 2018, and filed on February 8, 2018, in the Office of the Stearns Registrar of Titles (the "Mortgage"), all obligations (collectively, the "Obligations") under and with respect to the Note and the Mortgage are secured by the Property. A copy of the Mortgage is attached to the Affidavit as Exhibit B.

9)      Debtor executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

10)     All rights and remedies under the Mortgage have been assigned to the Movant pursuant to that certain assignment of mortgage, a copy of which is attached to the Affidavit as Exhibit C.

11)     The legal description of the Property is: LOT THREE (3), BLOCK SEVEN (7), HOLY SPIRIT SECOND ADDITION TO THE TOWN OF ST. CLOUD (NOW A PART OF THE CITY OF ST. CLOUD), ACCORDING TO THE PLAT AND SURVEY THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE COUNTY RECORDER IN AND FOR STEARNS COUNTY, MINNESOTA.

12)     In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge, and a foreclosure action commences on the mortgaged property, the foreclosure will be conducted in the name of the Movant.

13)     As of March 5, 2025, the unpaid principal balance of the loan is $115,363.30, together with accrued interest, costs and fees (if any) in the amount of $11,630.87, for a total payoff amount of $126,994.17.

14)     In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $1,350.00 in legal fees and $199.00 in costs. Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

15)     Pursuant to 11 U.S.C. § 362(g) the burden is on Debtor to prove absence of cause and/or adequate protection. This Movant's interest in the property is not adequately protected where, as of March 5, 2025, the Debtor is delinquent for monthly payments required for the months of January 1, 2025 through March 1, 2025 in the amount of $957.23 each; and any other additional payments that may become due and owing. The "Current Default Amount" as defined in Local Form 4001-1 is $2,702.37 which includes a suspense balance of $169.32.

16)     The value of the Property as scheduled by the Debtor is $218,300.00. The current tax-assessed value of the Property is $140,900.00.

17)     Upon information and belief, the encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, listed are:

   a)  Movant: $126,994.17

18)    Cause exists for relief from the automatic stay for the following reasons:

   a)  Movant's interest in the property is not adequately protected; and

   b)  Post-confirmation payments required by the confirmed Plan have not been made to Movant.

   c)  Pursuant to 11 U.S.C. §362(d)(2)(B), the Property is not necessary for an effective reorganization.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1)     Terminating the automatic stay of 11 U.S.C. § 362(a) to allow Movant (and any successors and assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2)     That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3)     That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

4)     For such other relief as the Court deems proper.

Dated: March 17, 2025          By:  /s/ Michael V Schleisman
                                    HALLIDAY, WATKINS & MANN, P.C.
                                    Michael V. Schleisman
                                    Attorney for Movant
                                    1333 Northland Drive, Suite 205
                                    Mendota Heights, MN 55120
                                    801-355-2886
                                    michael@hwmlawfirm.com
                                    Attorney ID # 0394992

MN22472

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

IN RE:

Chapter 13
Case No. 24-60206-MER

Joshua LaRue Anderson

Debtor.

## AFFIDAVIT IN SUPPORT OF MOTION
## FOR RELIEF FROM AUTOMATIC STAY

I, Gabriel Ibanda , declare under penalty of perjury as follows:

1)    I am a Officer _____ of U.S. Bank National Association and have personal knowledge of the facts stated herein.

2)    This affidavit is provided in support of the Motion for Relief from Stay filed by Movant in this proceeding (the "Motion").

3)    The Debtor, Joshua L Anderson and Co-Debtor, Stephanie-Ann N Caldwell have executed and delivered or are otherwise obligated with respect to that certain promissory note in the original principal amount of $114,701.00 (the "Note"). An accurate copy of the Note is attached hereto as Exhibit A.

4)    Pursuant to that certain Mortgage (the "Mortgage"), all obligations (collectively, the "Obligations") under and with respect to the Note and the Mortgage are secured by the Property (as defined in the Motion). An accurate copy of the Mortgage is attached hereto as Exhibit B.

5)    The address of the Property is 1514 16th Street S, Saint Cloud, MN 56301. The legal description of the Property is: LOT THREE (3), BLOCK SEVEN (7), HOLY SPIRIT SECOND ADDITION TO THE TOWN OF ST. CLOUD (NOW A PART OF THE CITY OF ST. CLOUD), ACCORDING TO THE PLAT AND SURVEY THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE COUNTY RECORDER IN AND FOR STEARNS COUNTY, MINNESOTA.

6)    All rights and remedies under the Mortgage have been assigned to the Movant pursuant to that certain assignment of mortgage, a copy of which is attached to the Affidavit as Exhibit C.

7)    As of March 5, 2025, the unpaid principal balance of the loan is $115,363.30, together with accrued interest, costs and fees (if any) in the amount of $11,630.87, for a total payoff amount of $126,994.17.

MN22472

8) The value of the Property as scheduled by the Debtor is $218,300.00. The current tax-assessed value of the Property is $140,900.00. Based upon my assessment, the value of the property is no greater than $218,300.00.

9) Upon information and belief, the encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, listed are:

    a) Movant: $126,994.17

10) As of March 5, 2025, the total arrearage/delinquency is $2,702.37 which includes a suspense balance of $169.32. Attached hereto as Exhibit D is Local Form 4001-1.

Pursuant to 28 U.S.C. §1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 13 day of March , 20 25 .

Name: Gabriel Deanda

Title: Officer

THE FOREGOING INSTRUMENT WAS SWORN TO AND SUBSCRIBED before me personally in the State of Texas , County of Dallas this 13th day of March , 2025 by Gabriel Deanda who,

X is personally known to me,

OR

____ produced _____ (type of ID provided) AS IDENTIFICATION TO ME AND WHO DID TAKE AN OATH

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my seal of office the day and year last above written.

NOTARY PUBLIC

(seal)

My commission expires: 10/04/26

HENRI VENTURA
Notary ID #133997996
My Commission Expires
October 4, 2026
NOTARY PUBLIC
STATE OF TEXAS

MN22472

# EXHIBIT A



# ORIGINAL

## NOTE

*Caldwell*



FHA Case No.

| JANUARY 12, 2018 | ROSEVILLE, | MINNESOTA |
|---|---|---|
| [Date] | [City] | [State] |

**1514 16TH STREET S, SAINT CLOUD, MN 56301**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $114,701.00 (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is **MOVEMENT MORTGAGE, LLC**. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **4.000%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1ST** day of each month beginning on **MARCH 1, 2018**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on **FEBRUARY 1, 2048**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O BOX 890964, CHARLOTTE, NC 28289-5964** or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $547.60.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which

Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  1-12-18
-/BORROWER - STEPHANIE-ANN N CALDWELL - DATE -

_____  1-12-18
-/BORROWER - JOSHUA L ANDERSON - DATE -

*[Sign Original Only]*

MORTGAGE LOAN ORIGINATOR **ALAN KRAUSE**
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER ▮▮▮▮
MORTGAGE LOAN ORIGINATION COMPANY **MOVEMENT MORTGAGE, LLC**
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER ▮▮▮▮

# ORIGINAL

**Allonge to Promissory Note**

Pay to the order of:

### U.S. Bank National Association

Without Recourse,
Movement Mortgage, LLC

By : _Cynthia L Craig AVP_

Borrower Name(s):    Stephanie-ann N. Caldwell
                         Joshua L. Anderson

Property Address:    1514 16th Street S
                        Saint Cloud, Minnesota 56301

Loan Number:       █████████

Loan:                $114,701.00

Date:                01/12/2018

Pay to the order of

Without Recourse
U.S. Bank National Association
_Paula T. Hughes_
Paula T. Hughes
Vice President

Allonge to Note

EXHIBIT B

MORTGAGE REGISTRATION TAX:
$ 263.81

*Randy R. Schreifel*

STEARNS COUNTY AUDITOR

BY: BRENDA STANGER
DEPUTY AUDITOR

Return To: LendServ
National Title
1970 Oakcrest Ave
Suite #118
Roseville MN 55113

OFFICE OF REGISTRAR OF TITLES
STEARNS COUNTY, MINNESOTA

Document: T41515

Certified, Filed, and/or Recorded on

February 08, 2018 1:34 PM

Torrens
Certificate:        9278

DIANE GRUNDHOEFER, REGISTRAR OF TITLES

[Space Above This Line For Recording Data]

## PURCHASE MONEY MORTGAGE

CALDWELL

After Recording Return To:
MOVEMENT MORTGAGE, LLC
8024 CALVIN HALL RD
INDIAN LAND, SC 29707

This instrument was drafted by:
ARONA WILLIAMS
MOVEMENT MORTGAGE, LLC
8024 CALVIN HALL ROAD
INDIAN LAND, SC 29707
(630) 267-2878

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A) "Security Instrument" means this document, which is dated JANUARY 12, 2018, together with all Riders to this document.

(B) "Borrower" is STEPHANIE-ANN N CALDWELL AND JOSHUA L ANDERSON, BOTH SINGLE PERSONS. Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is

FHA Minnesota Mortgage - 09/15
19381.13                               Page 1 of 14

acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is **MOVEMENT MORTGAGE, LLC.** Lender is a LLC organized and existing under the laws of **DELAWARE.** Lender's address is **8024 CALVIN HALL ROAD INDIAN LAND, SC 29707.**

**(E) "Note"** means the promissory note signed by Borrower and dated **JANUARY 12, 2018.** The Note states that Borrower owes Lender **ONE HUNDRED FOURTEEN THOUSAND SEVEN HUNDRED ONE AND 00/100** Dollars (U.S. **$114,701.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **FEBRUARY 1, 2048.**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

    ☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Planned Unit Development Rider
    ☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non -appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its

implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the **COUNTY** of **STEARNS**:
**SEE EXHIBIT A LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**
(All or part of the purchase price of the Property is paid for with the money loaned.)
which currently has the address of **1514 16TH STREET S, SAINT CLOUD**, Minnesota **56301** ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but no limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

FHA Minnesota Mortgage - 09/15

19381.13

Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.

SCR 4 of 16

Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or

defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work



SCR __6__ of __16__

has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application

FHA Minnesota Mortgage - 09/15

19381.13



process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the

excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in

FHA Minnesota Mortgage - 09/15

19381.13                                         Page 9 of 14

Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by

FHA Minnesota Mortgage - 09/15

19381.13                                             Page 10 of 14

this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument at the time such documents are executed or within a reasonable time thereafter.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section.14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do,



nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower by certified mail to the address of the Property or another address designated by Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees.**

**If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**25. Interest on Advances.** The interest rate on advances made by Lender under this Security Instrument shall not exceed the maximum rate allowed by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_(signature)_ 1-12-18

-BORROWER - STEPHANIE-ANN N CALDWELL - DATE -

_(signature)_ 1-12-18

-BORROWER - JOSHUA L ANDERSON - DATE -

[Space Below This Line For Acknowledgment]

STATE OF ___Minnesota___

COUNTY OF STEARNS

This instrument was acknowledged before me on ___January 12, 2018___, by ___Stephanie-Ann N Caldwell and Joshua L Anderson, both single persons___

_(signature)_

(Signature of person taking acknowledgment)

ALLISON N LUNDSTED
Notary Public
State of Minnesota
My Commission Expires
January 31, 2021

(Title or Rank) _____

My Commission Expires: _____

MORTGAGE LOAN ORIGINATOR **ALAN KRAUSE**
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER

MORTGAGE LOAN ORIGINATION COMPANY **MOVEMENT MORTGAGE, LLC**
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER

**FHA Minnesota Mortgage - 09/15**
19381.13                                    Page 14 of 14

**Exhibit "A"**

THE REAL PROPERTY IN STEARNS COUNTY, MINNESOTA, DESCRIBED AS FOLLOWS:

LOT THREE (3), BLOCK SEVEN (7), HOLY SPIRIT SECOND ADDITION TO THE TOWN OF ST. CLOUD (NOW A PART OF THE CITY OF ST. CLOUD), ACCORDING TO THE PLAT AND SURVEY THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE COUNTY RECORDER IN AND FOR STEARNS COUNTY, MINNESOTA.

# EXHIBIT C



**OFFICE OF REGISTRAR OF TITLES**
**STEARNS COUNTY, MINNESOTA**

**Document: T43626**

Certified, Filed, and/or Recorded on

**December 31, 2020 2:57 PM**

Torrens
Certificate:     9278

**RITA LODERMEIER, REGISTRAR OF TITLES**



## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR MOVEMENT MORTGAGE, LLC, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026)** by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to **U.S. BANK NATIONAL ASSOCIATION, WHOSE ADDRESS IS 4801 FREDERICA STREET, OWENSBORO, KY 43201, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage was dated 01/12/2018, executed by **STEPHANIE-ANN N CALDWELL AND JOSHUA L ANDERSON, BOTH SINGLE PERSONS** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR MOVEMENT MORTGAGE, LLC, ITS SUCCESSORS AND ASSIGNS** and filed for record on 02/08/2018 as **Document # T41515**, in the office of the Registrar of Titles of **STEARNS** County, **Minnesota**.
Cert # 9278

**Dated this 16th day of December in the year 2020**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR MOVEMENT MORTGAGE, LLC, ITS SUCCESSORS AND ASSIGNS**

By: _____

**Michelle L. Hays**
**VICE PRESIDENT**

STATE OF KENTUCKY   COUNTY OF DAVIESS
This foregoing instrument was acknowledged before me on this 16th day of December in the year 2020 by Michelle L. Hays as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR MOVEMENT MORTGAGE, LLC, ITS SUCCESSORS AND ASSIGNS. He/she/they is (are) personally known to me.

_____

Cindy Wood
Notary Public - STATE OF KENTUCKY
Commission expires: 02/24/2021

OFFICIAL SEAL
CINDY WOOD
NOTARY PUBLIC - KENTUCKY
STATE-AT-LARGE
My Comm. Expires 2/24/2021
ID # 573237

**Document Prepared By: April Ferguson, U.S. Bank Mortgage Servicing, 4801 Frederica St., Owensboro, KY 42301**
**800-365-7772**
**When Recorded Return To: When Recorded Return To: U.S. Bank National Association, C/O Nationwide Title Clearing, Inc.**
2100 Alt. 19 North, Palm Harbor, FL 34683
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) FHA FORB MIN
MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026

SCR ___ of ___



EXHIBIT D

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re: Joshua LaRue Anderson
Debtor.

Case No. 24-60206-MER

## LOAN HISTORY

Begin loan history from the date of the first default related to the current default amount that is claimed in the motion.

| Date Payment Due | Date Payment Received | Date to which payment applied (mo/yr) | Amount rec'd from Debtor(s) | CHARGES Monthly Amount Due: Principal + Interest | Monthly Amount Due: Escrow | Amount Due: Late Fees | Amount Due: Other Charges* | Description of Charge |
|---|---|---|---|---|---|---|---|---|
| 1/1/2025 | | | | $495.32 | $461.91 | | -$169.32 | Suspense |
| 2/1/2025 | | | | $495.32 | $461.91 | | | |
| 3/1/2025 | | | | $495.32 | $461.91 | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| TOTALS | | | $0.00 (a) | $1,485.96 (b) | $1,385.73 (c) | $0.00 (d) | -$169.32 (e) | |

*Any "Other Charge" must be described, itemized by amount and allowed under Note and/or mortgage (ie inspection fee, appraisal fee, insurance, taxes, etc.)

| | |
|---|---|
| Default Amount Claimed in the Motion | $2,702.37 |
| Attorneys' fees and filing fee for the motion, if allowed under Note and/or Mortgage and sought by | $1,549.00 |
| Escrow Balance (amount held for payment of taxes, insurance, etc.) | $0.00 |
| Suspense Account Balance (amount of un-applied payments) | -$169.32 |

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

IN RE:

Chapter 13<br>Case No. 24-60206-MER

Joshua LaRue Anderson

          Debtor.

## MEMORANDUM IN SUPPORT OF MOTION
## FOR RELIEF FROM AUTOMATIC STAY

U.S. Bank National Association ("Movant") submits this memorandum of law in support of its motion for relief from the stays in the above-entitled matter.

## FACTS

Movant holds a valid, duly perfected mortgage on Property owned by Debtor.

Debtors confirmed Chapter 13 Plan ("Plan") requires Debtor to make post-petition mortgage payments directly to Movant, when due. Debtor is delinquent in respect to post-petition mortgage payments for the months of January 1, 2025 through March 1, 2025 in the total amount of $2,702.37 which includes a suspense balance of $169.32. Stephanie-Ann N Caldwell, a co-mortgagor, is also liable on the mortgage.

The value of the Property as scheduled by the Debtor is $218,300.00. The current tax-assessed value of the Property is $140,900.00. The total mortgage debt of Movant's Mortgage is $126,994.17.

## ARGUMENT

Under §362(d)(1) of the Bankruptcy Code, relief from the automatic stay shall be granted upon request of a creditor "for cause, including the lack of adequate protection of an interest in property of such [creditor]." 11 U.S.C. §362(d)(1).

MN22472

Debtor failed to make the payments required by the terms of the Plan.  Such a failure constitutes cause for lifting the automatic stay pursuant to 11 U.S.C. §362(d)(1).  First Federal Savings and Loan Association of Minneapolis v. Whitebread, 18 B.R. 192 (Bkrtcy. D. Minn. 1982).

Debtor has otherwise failed to provide Movant with adequate protection of its interest in the Property. Such circumstances constitute cause, within the meaning of §362(d)(1), justifying relief from the stay.  In Re Tainan, 48 B.R. 250 (Bkrtcy E.D. Pa. 1985); In Re Quinlan, 12 B.R. 516 (Bkrtcy. W.D. Wis. 1981).

### CONCLUSION

Accordingly, Movant is entitled to an order terminating the stays of 11 U.S.C. §362(a) and authorizing it to foreclose its mortgage on the Property.


Dated: March 17, 2025                    By:   /s/ Michael V Schleisman
_____

HALLIDAY, WATKINS & MANN, P.C.
Michael V. Schleisman
Attorney for Movant
1333 Northland Drive, Suite 205
Mendota Heights, MN 55120
801-355-2886
michael@hwmlawfirm.com
Attorney ID # 0394992

MN22472

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

IN RE:                                                          Chapter 13
                                                      Case No. 24-60206-MER

Joshua LaRue Anderson

        Debtor.

## UNSWORN DECLARATION FOR PROOF OF SERVICE

The undersigned, employed by HALLIDAY, WATKINS & MANN, P.C., attorneys licensed to practice in this Court, declare that on March 17, 2025, I served the annexed: a) Notice of Hearing and Motion for Relief from Stay, b) Affidavit in Support of Motion for Relief from Stay, c) Memorandum of Law, and d) proposed Order for Relief to each person referenced below, a copy thereof by enclosing the same in an envelope with first class postage prepaid, addressed to each of them at their last known address as follows:

Joshua LaRue Anderson
1514 16th Street S
Saint Cloud, MN 56301

Stephanie-Ann N Caldwell
4222 Clearwater Rd Apt 202
Saint Cloud, MN 56301-5098

And delivered by certified mail on the date e-filed with the Court to each of them as follows:

Minnesota Housing Finance Agency
Minnesota Attorney General
445 Minnesota Street, Ste 1400
St. Paul, MN 55101

And delivered by e-mail notification under CM/ECF on the date e-filed with the Court to each of them as follows:

William P. Kain; Attorney for Debtors; *Via CM/ECF*
Kyle Carlson; Chapter 13 Trustee; *Via CM/ECF*
U.S. Trustee; *Via CM/ECF*

and this notice constitutes service or notice pursuant to Local Rule 9006-1(a).

And I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: <u>March 17, 2025</u>                    Signed: <u>/s/ Elizabeth Looker</u>

MN22472

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

IN RE:                                           Chapter 13
                                            Case No. 24-60206-MER

Joshua LaRue Anderson

            Debtor.

## <u>ORDER GRANTING RELIEF FROM STAY</u>

This case is before the court on the motion of U.S. Bank National Association for relief from the automatic stay imposed by 11 U.S.C. § 362(a).

Based on the record, the court finds that grounds exist under 11 U.S.C. § 362(d) to warrant relief.

**IT IS ORDERED:**

1)      The motion for relief from stay is granted as follows.

2)      The automatic stay imposed by 11 U.S.C. § 362(a) is terminated such that the movant may exercise its rights and remedies under applicable nonbankruptcy law with respect to the following property:

           LOT THREE (3), BLOCK SEVEN (7), HOLY SPIRIT SECOND ADDITION TO THE TOWN OF ST. CLOUD (NOW A PART OF THE CITY OF ST. CLOUD), ACCORDING TO THE PLAT AND SURVEY THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE COUNTY RECORDER IN AND FOR STEARNS COUNTY, MINNESOTA.

3)      Notwithstanding Fed. R. Bankr. P. 4001(a)(3), this order is effective immediately.

Dated:                                     _____
                                        United States Bankruptcy Judge

MN22472